IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DALLAS SMITH,

        Plaintiff,

v.                                                                                No. 10-cv-00518 MV/WDS

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant the Board of Regents of the University of New Mexico's Partial Motion to Dismiss (Doc. 8) and Defendant Levi Chavez's Partial Motion to Dismiss (Doc. 12). Having reviewed the briefs, relevant legal authority, and being otherwise fully informed, the Court finds that the motions are well-founded and will grant both motions.

## BACKGROUND

Plaintiff Dallas Smith filed this suit against the Board of Regents of the University of New Mexico ("the Board of Regents"), Levi Chavez (a University of New Mexico Hospital security officer), and five unknown University of New Mexico Hospital security officers. (Doc. 4-1). Defendant Levi Chavez and the five unknown University of New Mexico Hospital security officers (collectively, "the Security Officer Defendants") are sued in both their individual and official capacities. (*Id.* at ¶¶ 3-4). In his complaint, Mr. Smith alleges that he was a patient at the University of New Mexico Hospital ("UNMH") from September 14-17, 2009 for an acute blood pressure condition and that, as a result of a medication that was administered to him, he suffered vision loss during the period relevant to his complaint. (*Id.* at

¶ 6).  Mr. Smith contends that on September 18, 2009 (the day after being discharged from his inpatient stay), he suffered severe chest pain, a migraine headache, and difficulty breathing and thus his aunt called the UNMH emergency department ("ED") to inform them that he was returning to the hospital for treatment.  (*Id.* at ¶¶ 7-8).  Upon arriving at the UNMH lobby, Mr. Smith alleges that he was in such acute distress that he was unable to give the staff his name and information.  (*Id.* at ¶ 9).  Mr. Smith contends that despite having called ahead and presenting symptoms consistent with a heart attack, it took the UNMH response team approximately five minutes to get to the lobby and evaluate him.  (*Id.* at ¶ 10).  Mr. Smith alleges that "[w]hen they arrived, two UNMH staff members laughed and made racially motivated, derogatory comments to Mr. Smith such as 'you're ok, you're just a fat native drunk coming down off coke.'" (*Id.*).  Mr. Smith also alleges that they "told him that he was a 'drama king' and that he just needed to relax." (*Id.*).  Mr. Smith further alleges that UNMH staff brought wheelchairs to the lobby that were too small for him to fit in (as a 6'9" former football player) and told him that "he was too fat for the wheelchairs and better not fall out of them because he was too fat to pick up if he did." (*Id.* at  ¶ 11).

     Mr. Smith alleges that he was finally taken to the emergency department, but was still in too much distress to tell the staff his medical history and describe what was happening to him.  (*Id.* at ¶ 12).  Though Mr. Smith's girlfriend told staff that she would need to provide his information, as he was unable to do so, the emergency department staff refused to allow her into the area.  (*Id.*).  Mr. Smith alleges that "[f]rightened and having had enough abuse," he "eventually informed the ED staff that he did not wish to received care at the facility due to the poor treatment he was receiving and that he wanted to go to another hospital." (*Id.* at ¶ 13).  "Staff informed him that he could leave." (*Id.*).

Mr. Smith alleges that a nurse had to unlock a set of double doors in order for Mr. Smith to leave the emergency department. (*Id.* at ¶ 14). While waiting for the doors to be unlocked, Mr. Smith leaned against them to support himself. (*Id.*). According to Mr. Smith, "[w]hen the doors opened, the Security Officer Defendants, without a warrant or probable cause, immediately attacked Mr. Smith, grabbing, pushing, pulling and restraining him, and prevented him from leaving." (*Id.*). Mr. Smith alleges that, suffering from vision loss, he "had no idea who was attacking and restraining him or why." (*Id.* at ¶ 15). Mr. Smith contends that he pushed one of the officers away from him in defense and the Security Officer Defendants "then pushed Mr. Smith against the wall, restrained him, escorted him back into the ED where they further restrained him for approximately 15 minutes, attempted to put cuffs on him (but could not find cuffs large enough to fit him), and informed him that he was being arrested and charged with felony assault and battery on an officer." (*Id.*). UNMH security staff allegedly said that Mr. Smith "was acting irate while in the ED, had kicked the ED doors in his attempt to leave the ED, and that he became aggressive with them." (*Id.* at ¶ 16)

Mr. Smith contends that eventually a member of the University of New Mexico Police Department, Officer Rush, took him to the police station for processing. (*Id.*). Plaintiff alleges that though Officer Rush's review and conclusions based on his investigation of the incident contradicted the allegations made by UNMH security staff, he nevertheless filed a criminal complaint against Mr. Smith for battery based on the false allegations of the Security Officer Defendants. (*Id.* at ¶¶ 17-18). The criminal complaint was subsequently dismissed. (*Id.* at ¶ 19).

Mr. Smith's complaint contains seven counts: Count I alleges battery by the Security Officer Defendants; Count II alleges unlawful arrest by the Security Officer Defendants;

Count III alleges false imprisonment by the Security Officer Defendants; Count IV alleges that the Board of Regents is liable for the acts of the Security Officer Defendants pursuant to the doctrine of respondeat superior; Count V alleges that the Board of Regents was negligent in its supervision or training of the Security Officer Defendants; Count VI alleges that all Defendants violated Mr. Smith's statutory and constitutional rights pursuant to 42 U.S.C. § 1983; and Count VII, which is brought against all Defendants, alleges that Defendants conspired to deprive Mr. Smith of his civil rights in violation of 42 U.S.C. § 1985(3). (*Id.* at ¶¶ 20-48). The complaint further specifies that damages as to Counts VI and VII are being sought "only against the Security Officer Defendants in their individual capacities." (*Id.* at pp. 7-8).

The Board of Regents's Partial Motion to Dismiss (Doc. 8) seeks dismissal of Counts VI and VII as to the Board of Regents on the basis that *inter alia* the Board of Regents is not a "person" for purposes of 42 U.S.C. §§ 1983 and 1985(3) and Defendant Levi Chavez's Partial Motion to Dismiss (Doc. 12) seeks dismissal of Count VI to the extent that it is brought against him in his official capacity and dismissal of Count VII against him in its entirety.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).

## ANALYSIS

A.     **Count VI:  Plaintiff's Section 1983 Claims**

Count VI of Plaintiff's complaint alleges a cause of action pursuant to 42 U.S.C. § 1983, which provides in relevant part that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  (Emphasis added).  It is well-established that "[n]either the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of § 1983." *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  However, while a state official may not be sued for monetary damages in his or her official capacity—as such suit is no different from a suit against the state itself—a state official may be sued in his or her official capacity for injunctive relief pursuant to § 1983, as such official-capacity actions for prospective relief are not treated as actions against the state.  *Will*, 491 U.S. at 71 & n.10; *see also Harris*, 51 F.3d at 906.

The Board of Regents argues that Count VI must be dismissed against it, as the Board of Regents and the University are arms of the state and thus not "persons" pursuant to 42 U.S.C. § 1983.  *See Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (district court was correct in holding that plaintiffs failed to state a claim under § 1983, as it was undisputed that the suit named only agencies of the State of New Mexico and state employees in their official capacities); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir.

1996) (holding the University of Utah and the University of Utah Medical Center are arms of the state); N.M. Const. Art. XII, § 13 (providing for appointment of the Board of Regents of the University of New Mexico).  Likewise, Defendant Chavez argues that Count VI must be dismissed against him to the extent it is brought in his official capacity as the official-capacity claims against him are indistinguishable from claims against the state itself.

In his oppositions to the motions, Plaintiff does not contest that the Board of Regents is an arm of the state, nor does Plaintiff contest that monetary damages are unavailable as to his § 1983 claim against Defendant Chavez in his official capacity.  Instead, Plaintiff argues that his complaint makes it clear that he is not seeking money damages against either the Board of Regents or Defendant Chavez in his official capacity as to Count VI, but is instead seeking only declaratory and injunctive relief.  (Doc. 4-1 at p. 7; Doc. 11 at pp. 2 & 4; Doc. 24 at p. 2).  Relying on well-settled caselaw holding that a suit against a state official in his or her official capacity for prospective injunctive relief pursuant to § 1983 is not treated as an action against the state, Plaintiff argues that his claims for declaratory and injunctive relief should be allowed to proceed against the Board of Regents and Defendant Chavez in his official capacity.[1]  *Will*, 491 U.S. at 71 n.10; *Harris*, 51 F.3d at 906.

While the prayer for relief in Plaintiff's complaint requests both "a declaratory judgment against all defendants that their actions were unconstitutional and violated his civil rights protected by the United States Constitution and 42 U.S.C. § 1983" and "preliminary and

---

[1] The Board of Regents argues that while a state official may be sued in his or her official capacity for prospective relief, such relief is not available against an arm of the state, as an arm of the state is never a person for purposes of 42 U.S.C. § 1983.  As the Court determines that Plaintiff has not sufficiently alleged a claim for either declaratory or injunctive relief, it need not address this argument.

permanent injunctions enjoining and restraining all defendants from ongoing violations of federal law" (Doc. 4-1 at p. 8), the allegations in Plaintiff's complaint do not support a claim for either declaratory or injunctive relief.  In order to obtain declaratory relief pursuant to 42 U.S.C. § 1983, a plaintiff must meet the "actual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201.  *Johnson v. Lally*, 118 N.M. 795, 798-99, 887 P.2d 1262, 1265-66 (N.M. Ct. App. 1994) ("Under the great weight of the case law, it is clear that past wrongs, even unconstitutional wrongs, do no create a foundation for declaratory relief without either continuing illegal actions or continuing consequences to Plaintiff.").  In determining whether the "actual controversy" requirement is met, courts "look beyond the initial 'controversy' which may have existed at one time; rather, [they] must decide 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment." *Schepp v. Fremont Cnty.*, 900 F.2d 1448, 1452 (10th Cir. 1990) (emphasis in *Schepp*) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Here, Plaintiff has alleged a single incident that occurred on September 18, 2009, rather than an ongoing deprivation of his rights.  While Plaintiff was charged with battery as a result of the incident, the complaint alleges that the criminal complaint was dismissed.  Moreover, there is no allegation that the incident is likely to be repeated; to the contrary, it would appear unlikely that Plaintiff would find himself in a similar situation in the future.  Accordingly, the Court concludes that the allegations in the complaint are insufficient to establish a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

　　　The allegations are likewise insufficient to establish entitlement to injunctive relief.  Mr. Smith's complaint alleges past exposure to illegal conduct, rather than an ongoing injury.

Further, as noted above, there is no realistic threat of future injury to Mr. Smith, much less a likelihood of substantial and immediate irreparable injury. As the fact of past injury does not confer standing to seek prospective injunctive relief without present adverse effects or some credible threat of future injury, the Court concludes that Mr. Smith has failed to state a claim for injunctive relief as to Count VI. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (holding plaintiff allegedly subjected to an unconstitutional chokehold by police officers had not met requirements for seeking injunction where there was no more than speculation that plaintiff would again be subjected to an illegal chokehold); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, . . . if unaccompanied by any continuing, present adverse effects."); *Harris*, 51 F.3d at 907-08 (district court did not err in dismissing claim for injunctive relief where complaint failed to allege facts that, if taken as true, would establish a "realistic threat of future exposure" to the officials' allegedly unconstitutional conduct).

As Plaintiff acknowledges that he seeks only declaratory and injunctive relief against the Board of Regents and Defendant Chavez in his official capacity as to Count VI of his complaint, and as the Court finds that Plaintiff's complaint does not allege facts that would entitle him to such relief, the Court will dismiss Count VI as to the Board of Regents and as to Defendant Chavez in his official capacity.

**B.      Count VII:  Plaintiff's Section 1985(3) Claims**

        **1.      The Board of Regents and Defendant Chavez in His Official Capacity**

Count VII of Plaintiff's complaint alleges a cause of action pursuant to 42 U.S.C. § 1985(3), which prohibits two or more "persons" from conspiring to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the

laws. The parties are in agreement that the analysis of whether a defendant is a "person" for purposes of liability under § 1985(3) is identical to that used to determine whether a defendant is a person pursuant to § 1983. (Doc. 11 at p. 4; Doc. 24 at p. 3). *See Rode v. Dellarciprete*, 617 F. Supp. 721, 723 & n.2 (M.D. Pa. 1985); *Thompson v. New York*, 487 F. Supp. 212, 228 (N.D.N.Y. 1979). The Board of Regents seeks dismissal of Count VII against it on the basis that as an arm of the state, it is not a "person" for purposes of § 1985(3). Defendant Chavez likewise seeks dismissal of Count VII against him to the extent it is brought in his official capacity, as such official-capacity suit is no different from a suit against the state itself.

Again, in his opposition to the motions, Plaintiff does not contest that the Board of Regents is an arm of the state, nor does Plaintiff contest that monetary damages are unavailable as to his § 1985(3) claim against Defendant Chavez in his official capacity. Instead, Plaintiff argues that his complaint makes it clear that he is not seeking money damages against either the Board of Regents or Defendant Chavez in his official capacity as to Count VII, but is instead seeking only declaratory and injunctive relief. (Doc. 4-1 at p. 8; Doc. 11 at pp. 2 & 4; Doc. 24 at p. 2). However, for the same reasons set forth above, the Court concludes that the allegations in Plaintiff's complaint are insufficient to establish entitlement to either declaratory or injunctive relief as to Count VII. Accordingly, the Court will dismiss Count VII against the Board of Regents and Defendant Chavez in his official capacity.[2]

### 2. Defendant Levi Chavez in His Individual Capacity

In his Partial Motion to Dismiss, Defendant Chavez also argues that the Court should

---

[2] In light of the Court's conclusion that Count VII must be dismissed against the Board of Regents for the aforementioned reasons, the Court does not address the Board of Regents's alternative argument that Count VII must be dismissed on the basis that the Board of Regents cannot conspire with its own employees.

dismiss Plaintiff's § 1985(3) claims against him in his individual capacity for failure to state a claim.  "The essential elements of a § 1985(3) claim are:  (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Moreover, "§ 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)); *see also Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 748 (10th Cir. 1980).

   The Court finds that Plaintiff has not sufficiently alleged Defendant Chavez was involved in a conspiracy that was racially motivated or motivated by otherwise class-based, invidiously discriminatory animus.  The complaint does not identify Mr. Smith's race and the complaint's only factual allegation of racial or class-based discriminatory animus relates to conduct by the UNMH response team that allegedly occurred in the lobby of the hospital, prior to Mr. Smith being transported to the emergency department.  Specifically, Mr. Smith alleges that when the UNMH response team arrived "two UNMH staff members laughed and made racially motivated, derogatory comments to Mr. Smith such as 'you're ok, you're just a fat native drunk coming down off coke.'"  (Doc. 4-1 at ¶ 10).  Subsequently, Mr. Smith alleges that he was taken to the emergency department, informed that he could leave the hospital, and when he attempted to exit a set of previously locked double doors, was immediately attacked by the Security Officer Defendants, who allegedly restrained him and prevented him from leaving.  (*Id.* at ¶¶ 12-14).  After Mr. Smith pushed one of the officers away from him in defense, the Security Officer Defendants allegedly pushed Mr. Smith against a wall, restrained him, escorted him back into

10

the emergency department, and informed him that he was being arrested and charged with felony assault and battery on an officer.  (*Id.* at ¶ 15).

There is no allegation in the Complaint that the racially derogatory comments allegedly made by two staff members in the lobby were communicated to Defendant Chavez, or any of the other Security Officer Defendants, nor is there any allegation that the two individuals who allegedly made the comments shared a general conspiratorial objective with Defendant Chavez or any of the Security Officer Defendants to deprive Mr. Smith of equal protection or equal privileges and immunities.  Accordingly, even assuming without deciding that Plaintiff has alleged sufficient facts to establish that the Security Officer Defendants conspired to assault and restrain Mr. Smith, Plaintiff has not alleged sufficient facts to establish that the conspiracy was racially motivated.  The Court will therefore grant Defendant Chavez's motion to dismiss Count VII against him in his individual capacity.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT** Counts VI and VII of Plaintiff's complaint are dismissed as to Defendant the Board of Regents of the University of New Mexico.

**IT IS FURTHER ORDERED THAT** Count VI of Plaintiff's complaint is dismissed as to Defendant Levi Chavez to the extent it is brought against him in his official capacity.

**IT IS FURTHER ORDERED THAT** Count VII of Plaintiff's complaint is dismissed as to Defendant Levi Chavez in both his official capacity and his individual capacity.

DATED this 29th day of March, 2011.

_____
MARTHA VAZQUEZ
United States District Judge

<u>Attorney for Plaintiff</u>:
    David A. Streubel, Esq.
    Donald F. Kochersberger III, Esq.
    Kallie L. Dixon, Esq.

<u>Attorney for Defendants the Board of Regents</u>
<u>of the University of New Mexico and Levi Chavez</u>:
    Alfred A. Park, Esq.
    Lawrence M. Marcus, Esq.